JUSTICE ALBIN, dissenting.
The majority's opinion violates cardinal principles of statutory interpretation in the service of upholding defendant's conviction for a crime greater than the one she committed. Criminal statutes should not be pliable things, however disturbing the facts of a case. Defendant surely is no innocent. Based on the State's proofs, had defendant been charged with abuse and neglect, she could have been convicted of that fourth-degree offense, N.J.S.A. 9:6-3. But based on the proofs, she did not commit the second-degree offense of endangering the welfare of a child, N.J.S.A. 2C:24-4, for which she received a six-year prison term.
The majority construes the second-degree endangering statute, N.J.S.A. 2C:24-4, to criminalize the civil definition of abuse and **599 neglect in N.J.S.A. 9:6-8.21.[1] It arrives at that conclusion by failing to apply the endangering statute's requirement that a child suffer harm for a defendant to be guilty of that second-degree *970 offense. Thus, according to the majority, a defendant is guilty of endangering if the child is exposed to a substantial risk of harm. In the end, the majority makes no distinction between harm and substantial risk of harm.
To reach this result -- a result the Legislature could not have intended -- the majority ignores the common usage of words, fails to acknowledge the textual differences between the two statutes, disregards the endangering statute's legislative history, pays no heed to the doctrine that criminal statutes are to be narrowly construed, accepts as "sound precedent" wrongly reasoned Appellate Division decisions, and forgets that this Court's role is to correct and not to perpetuate lower court errors.
I therefore respectfully dissent.
I.
A.
Under the endangering statute, N.J.S.A. 2C:24-4(a)(2), a parent or guardian "who causes the child harm that would make the child an abused or neglected child as defined in [N.J.S.A.] 9:6-1, [N.J.S.A.] 9:6-3 and ... [N.J.S.A.] 9:6-8.21 is guilty of a crime of the second degree." (emphasis added). The endangering statute incorporates the criminal definition of abuse and neglect, N.J.S.A. 9:6-1, and the civil definition of abuse and neglect, N.J.S.A. 9:6-8.21. But harm is an essential element of the endangering statute. If not, the endangering statute merely criminalizes the civil definition of abuse and neglect.
The civil abuse-and-neglect statute does not necessarily require the element of harm. See N.J.S.A. 9:6-8.21. A parent or guardian **600 engages in civil abuse and neglect when a child "is in imminent danger of becoming impaired as the result of the failure of his parent or guardian ... to exercise a minimum degree of care" and when the child is placed in "substantial risk" of harm. N.J.S.A. 9:6-8.21. Other examples of abuse and neglect in the civil statute do punish harm, such as when a parent or guardian "commits or allows to be committed an act of sexual abuse against the child," and "the infliction of excessive corporal punishment." N.J.S.A. 9:6-8.21(c).
Most categories of abuse and neglect in the fourth-degree criminal statute, N.J.S.A. 9:6-3, encompass harm, but not all, see N.J.S.A. 9:6-1. Into the harm category, for example, falls such conduct as "habitually tormenting, vexing or afflicting a child;" a "willful act of omission or commission whereby unnecessary pain and suffering, whether mental or physical, is caused or permitted to be inflicted on a child;" "using excessive physical restraint on the child under circumstances which do not indicate that the child's behavior is harmful to himself, others or property;" and "inflicting unnecessarily severe corporal punishment upon a child." N.J.S.A. 9:6-1. A parent or guardian also commits the crime of neglect, whether or not the child suffers harm, by "willfully failing to provide proper and sufficient food, clothing, maintenance, regular school education as required by law, medical attendance or surgical treatment, and a clean and proper home"; "the habitual use ... in the hearing of such child, of profane, indecent or obscene language;" "the performing of any indecent [or] immoral ... deed, in the presence of a child, that may tend to debauch or endanger or degrade the morals of the child;" and exposing a child to "moral risk without proper and sufficient protection." Ibid.
If the endangering statute's harm requirement does not modify the civil and criminal definitions of abuse and neglect, then exposing a child to a substantial risk of harm (the civil definition) or risk of harm under the fourth-degree definition is a second-degree crime. The majority's approach *971 equates harm with substantial risk of harm. As a result, the majority gives the word **601 "harm" a wholly different meaning than its customary, well-understood, and common-sense definition. Ante at 591-93, 192 A.3d at 965-66; see also Webster's Third New International Dictionary 1034 (1981) (defining harm as "physical or mental damage" and "a material and tangible detriment or loss to a person"). The majority reads the word "harm" caused to a child, a necessary predicate to an endangering conviction, to mean a substantial risk of harm to a child. There is a difference, however, between a child who is permitted to run through traffic (substantial risk of harm) and a child who is struck while doing so (harm). Words make a difference.
A sensible textual construction of the endangering statute -- consistent with its language and legislative intent -- would be to require harm as a precondition to the examples given in the abuse-and-neglect statutes. Thus, the statute would punish "harm that would make the child an abused or neglected child" for purposes of endangering a child under N.J.S.A. 2C:24-4(a)(2) (emphasis added). Exposing a child to a substantial risk of harm, however, does not satisfy the definition of harm and is not sufficient to constitute a violation of the second-degree endangering statute. In this way, the endangering statute can be reconciled with the Legislature's grading of the fourth-degree offense of abuse and neglect and the civil statutory violation of abuse and neglect.
B.
The majority's position is also at odds with the legislative history of the endangering statute. The original draft language of the endangering statute, N.J.S.A. 2C:24-4, read:
Any person who shall abuse, be cruel to or neglectful of any child shall be guilty of a crime of the fourth degree. Any parent, guardian or person having the care, custody or control of any child, who shall abandon such child shall be guilty of a crime of the fourth degree.
[1 The New Jersey Penal Code: Final Report § 2C:24-4, at 91 (Criminal Law Revision Comm'n 1971).]
Noticeably absent from this draft is any mention of the word "harm." In its Commentary, the New Jersey Criminal Law Revision **602 Commission expressed its criticism of this version and reluctantly endorsed it. The Commission stated:
We are not happy with the breadth of, nor the precision of the definitions of, abuse, abandonment, cruelty[,] and neglect in N.J.S.[A.] 9:6-1. The conduct which is appropriately prevented by non-criminal sanctions need not always also be made criminal. Further, provisions of Chapter 6 of Title 9 show the basic thrust of it not to be to provide a criminal sanction but rather a strong remedy to compel support and/or proper conduct toward the child. Pending a re-examination of those definitions for civil purposes, we do not believe we should tamper with them for criminal purposes which might destroy the most effective sanction to stop the misconduct. We do believe that reconsideration of this entire field of law would be appropriate. With hesitancy, then, we simply recommend continuation of existing law.
[2 The New Jersey Penal Code: Final Report § 2C:24-4, at 260 (Criminal Law Revision Comm'n 1971) (citations omitted).]
The Legislature evidently was not satisfied with the breadth of the proposed endangering statute and adopted a much narrower version of N.J.S.A. 2C:24-4 by explicitly including a "harm" requirement. Thus, the final version, as codified, reads:
Any person having a legal duty for the care of a child or who has assumed *972 responsibility for such care, who causes such child such harm as would make such child an abused or neglected child as defined in [L. ] 1974, c. 119, § 1 ( [N.J.S.A.] 9:6-8.21 ) shall be guilty of a crime of the third degree.
[L. 1978, c. 95 (emphasis added); N.J.S.A. 2C:24-4 (1979).]
The Appellate Division cases relied on by the majority as "decades-old sound precedent," ante at 593, 192 A.3d at 966-67, have labored under a misunderstanding of the statute's legislative history. A number of panels -- including the one in this case below -- attributed the Law Revision Commission's 1971 note to the current endangering statute when, in fact, the Commission was referring to the draft proposal. See, e.g., State v. N.A., 355 N.J. Super. 143, 153-54, 809 A.2d 825 (App. Div. 2002). The Commission observed that the
[proposed § 2C:24-4 ] incorporates into the Code the existing law as to abuse, abandonment, cruelty and neglect of children by making such conduct criminal under the definitions of those terms in Title 9. The intent is to incorporate the crime now defined in N.J.S.[A.] 9:6-3 without substantial change except for the penalty provisions.
[2 The New Jersey Penal Code: Final Report § 2C:24-4, at 259 (Criminal Law Revision Comm'n 1971) (citations omitted), cited in N.A., 355 N.J. Super. at 153, 809 A.2d 825.]
**603 As discussed, the current endangering statute enacted in 1979 differs from the Commission's draft proposal. Most critically, the 1971 proposal did not incorporate a harm requirement into the statute, but spoke only generally in terms of abuse, cruelty, and neglect. See 1 The New Jersey Penal Code: Final Report § 2C:24-4, at 91 (Criminal Law Revision Comm'n 1971). Thus, the Appellate Division has repeatedly erred by imputing the Commission's commentary to the current statute. In short, the Criminal Law Revision Commission's commentary refutes and does not support the Appellate Division's interpretation of N.J.S.A. 2C:24-4 on which the majority is so dependent.
We are not required to perpetuate mistakes made by the Appellate Division, even when they have been on the books for many years. In particular, the majority cites to N.A., 355 N.J. Super. at 150-51, 809 A.2d 825, and State v. M.L., 253 N.J. Super. 13, 31, 600 A.2d 1211 (App. Div. 1991), as support for the notion that proof of "harm" and "risk of harm" have the same meaning. Ante at 592-95, 192 A.3d at 966-67.
Even if N.A. and M.L. were "sound" precedent, they are factually distinguishable. In both cases, the distinction between "harm" and "risk of harm" was not necessary to their outcomes, because the State had provided sufficient evidence to prove actual harm. See N.A., 355 N.J. Super. at 145-47, 809 A.2d 825 ; M.L., 253 N.J. Super. at 31, 600 A.2d 1211. In N.A., as the majority concedes, "a jury convicted the defendant under N.J.S.A. 2C:24-4(a) for having severely beaten her two-year-old son (actual harm )." Ante at 594, 192 A.3d at 967 (emphasis added) (citing 355 N.J. Super. at 145-46, 809 A.2d 825 ). In M.L., the defendant's infant child was left unattended in an apartment "littered with dirty diapers and laundry, plates of spoiled food and dog feces." 253 N.J. Super. at 18, 600 A.2d 1211. The infant was found sleeping in a playpen sweating in 90-degree heat and "in desperate need of a diaper change." Ibid.
The majority also suggests that the Legislature acquiesced to the interpretation given to the endangering statute by the Appellate **604 Division by not amending the statute after the N.A. and M.L. decisions. Ante at 593-95, 192 A.3d at 967. Legislative acquiescence is a slender reed on *973 which to justify a mistaken Appellate Division interpretation of a statute. The Legislature understands that, within our judicial system, the New Jersey Supreme Court has the last word on the interpretation of a statute and has the obligation to correct mistakes made by lower courts.
C.
At the very least, there are two reasonable interpretations of the endangering statute, and therefore the one more favorable to defendant should prevail. The majority ignores our jurisprudence's command that criminal statutes are to be construed narrowly. State v. Shelley, 205 N.J. 320, 328, 15 A.3d 818 (2011) ("[W]e must strictly construe the language of [a penal statute] where there is some uncertainty as to its application."). Our citizens should not have to guess about the meaning or the breadth of a criminal statute. Cf. State v. Morrison, 227 N.J. 295, 314, 151 A.3d 561 (2016). When two reasonable interpretations can be given to a statute riddled with ambiguity, the doctrine of lenity instructs that the interpretation favoring the defendant must prevail. State v. Fortin, 178 N.J. 540, 608, 843 A.2d 974 (2004) ("[W]hen a criminal statute is at issue, 'we are guided by the rule of lenity' and 'interpret ambiguous language in favor of a criminal defendant.' " (quoting State v. Livingston, 172 N.J. 209, 218, 797 A.2d 153 (2002) ) ); see also State v. Gelman, 195 N.J. 475, 482, 950 A.2d 879 (2008). Here, the majority disregards those principles by broadly construing N.J.S.A. 2C:24-4(a) and giving the State the benefit of any ambiguities.
If uncertainty abounds concerning whether the Legislature intended the expanded definition of harm in the endangering statute, the doctrine of lenity should prevail.
D.
Finally, by declaring that the second-degree endangering statute applies to conduct that creates a substantial risk of harm to a **605 child, the majority has erased all distinctions between the criminal and civil statutes. Thus, now a parent or guardian who commits civil abuse and neglect is also guilty of the Title 2C, second-degree crime of endangering, which carries a maximum prison exposure of ten years. In short, by removing the harm requirement from the endangering statute, the majority has criminalized the civil abuse-and-neglect statute.
The Legislature surely did not intend that absurd result.
II.
For the reasons expressed, I respectfully dissent.

Under the civil abuse-and-neglect statute, a parent or guardian who violates the statute is placed on the abuse-and-neglect registry. See N.J.S.A. 9:6-8.11.